1462-90, 1463-76, United States of America v. Willow v. Rosenberg Oral argument as follows 10 minutes for the each amendment, 20 minutes for the content Ms. Randall-Holt and Mr. Lee Rogers for the defendants. Good morning, your honors. I'm Doris Randall-Holt, the federal defender from the Western District of Tennessee. And I'd like to reserve two minutes for rebuttal. Alright. Today I speak to this court on behalf of Ms. Kim Dubrule. The issue before the court is whether the district court erred in determining Mr. Dubrule was competent at the time of the offense. Ms. Dubrule submits to the court, the defense does, that the court did err. And she's asking this court to review this issue because she was convicted of having conspired with Mr. Dubrule to issue written prescriptions for no legitimate medical purpose. And because she's asking you to review this issue because if Mr. Dubrule was incompetent at the time of the offense then, your honors, her conviction cannot stand. And if Mr. Dubrule was incompetent at the time of the offenses, your honor, that he could not appreciate the plea offer that was offered him prior to trial. It's basically I've got a crazy husband that I can't conspire with. Exactly, your honor. You're talking two different time frames, right? When the plea was argued is a different time than when the offense was committed. Yes. Okay, so you're saying there's not a ruling on his competency at two different periods of time. That's right. The ruling that we do have here is that he was competent during the trial, which is a third time period, right? Exactly. There's never been a ruling... Okay, the way this comes to us is that there was a motion below for a new trial. That's correct. Based upon the attorney's letter, I guess, to the court or whatever it was, raising the competency issue. Was there ever a ruling on the motion for a new trial by your client? There was never a ruling. It was mooted when the district court found that he was competent at the time of the offense. Okay, the trial court did find that he was competent at the time of the offense. Yes, the trial court did. And let me tell you how they got there. There were three mental health evaluations. The first one was immediately after trial. He had elbow counsel at trial. Elbow counsel had no meaningful discussions. I mean, there are things that happen at the trial that the written words on the transcript does not reflect. So elbow counsel asked, once he was appointed as counsel, he asked the district court to appoint him. The district court appointed him to represent him. He filed a motion to have him evaluated. That evaluation came back. He was sent to the Bureau of Prisons. At what point in time did he make that motion? After trial. After trial, when he was appointed CJA counsel for the co-defendant, Mr. DeBruy. This was before sentencing? Before sentencing, yes, Your Honor. I thought these competency evaluations went to whether he was competent during the trial itself. Is that right? Did they also went back to during the offense? Yes, sir. Okay, well, isn't that? Then adjudication, at least as to that one issue. Say it again. Isn't that? That has been adjudicated, Mr. DeBruy's competency during the time of the offense. So that's already been taken care of. And you're left with whether he was competent at the time the plea was argued. Or do you want to relitigate his competency during the offense? Why would we do that again? I'm asking you to look at the district court's whole order. His order, he dealt with each one of them in that one order. He said he found that he was competent during trial, he was competent to proceed to sentencing, and he was competent at the time of the offense after the third mental health evaluation because the first two mental health evaluations said that he was not competent. Okay, so why should we relitigate those issues then? Because we submit that the district court committed clear error. Okay. Because, I mean, he clearly had, Judge Griffin, all three of these mental health evaluations found the same diagnosis. Axis 2, personality disorders, and Axis 1, delusional disorder. The only difference is that the third one from the forensic panel, not the two BOP doctors, she found that she placed more emphasis on the personality disorders because he was familiar with the law, he filed motions. The trial judge found that she had greater expertise than the other doctors, that she had spent more time in the evaluation, that her opinions were entitled to greater weight, and they were given greater weight. And that's fact-finding. That's pretty hard to reverse on appeal. It's fact-finding, but if you look at these other evaluations and look at the time that they did spend and what they did do, but he gave more weight to her decision was because she said her decision was peer-reviewed. And what she was talking about is exactly what these other two doctors did. They discussed their decisions with their colleagues. That's all she did. Peer-reviewed. Look, that same forensic panel had been slammed once before by the Honorable Judge Bernice Donald in United States v. Shield when they said peer-reviewed. She was hired by the forensic panel. The people that she consulted with were Michael Welder, the chairman of the forensic panel, and another doctor. All three of these people are eating off the same plate. When you think of peer-review, you're thinking of someone that's outside of your group, someone that you do your work and you let another professional outside of your group look at it. That's not what happened here. But the district judge gave her a lot of weight because she used that term peer-reviewed and the other two doctors didn't. The problem was that she consulted with physicians with whom she was familiar. Is that what the argument is here? Well, I'm saying that she should have been given more weight because she was peer-reviewed and it was noted by the district court that the other two physicians admitted on cross-examination that their decisions were not peer-reviewed. I think if they had been balanced. Did they mean by that that they didn't consult with any physicians at all, that this is just their own process that they followed to arrive at their medical opinion? Because saying that would be different from saying, well, I went to some physicians who were unconnected to me and discussed this case with them or I discussed it with people that I was familiar with or were not familiar with. But that's different from saying I didn't discuss it with anybody. What's the difference between what she did and the others did? I don't see a difference. I think what she did, she consulted with her peers and those doctors did too. She just used the term and gave the court, I think, the illusion that hers was something more grandiose by saying it was peer-reviewed. Exactly. That is exactly what I think. It's like she made her sound like, judges, my work is peer-reviewed, you know, instead of saying I consulted with colleagues just like these other doctors did. They did the same thing. These were veteran doctors who had done hundreds. Would you dispute that Dr. Marsepolis did a more in-depth evaluation of the defendant and did more of a detailed workup than the other two physicians? Do you take issue with that? I would say she did do a little more than the others, but I would say that these doctors who have done hundreds of mental health evaluations knew what was required for them to be able to tell when a person is feigning a mental illness or malingering. They know how much they need to do. Yes, she talked to a few more witnesses than they did. Dr. Dwyer didn't read the 10-page, the 10-day trial transcript, but Dr. Marle did, and I think that pretty much the only difference between Marle and her was that he was not peer-reviewed. All right. Your Honor, we would— The red light is on. You'll let me sum up? Just briefly. We would ask the Court to reverse her conviction. Thank you. Thank you. Good morning. May it please the Court, my name is Megan Rogers, and I represent the appellant, Mr. DeBrule. I'd like to reserve two minutes of my time for rebuttal. I want to start by addressing Judge Griffin's question about why this Court should review the decision of competency. And the reason for that is simple. The District Court was focusing on the wrong question when it analyzed competency here. The District Court here was focused on Mr. DeBrule's ability to understand and follow basic court rules and procedures rather than his ability to adequately assist in his own defense, which is a constitutional requirement. We see in this case that Mr. DeBrule's delusional disorder was acknowledged by every single party in the case, beginning with the government, over two years before trial ever started. And all three examining experts concluded that he suffered from delusional disorder, which is a psychotic disorder. And the record shows, and I think this point is really important, that Mr. DeBrule was consistently fixated on the same delusions before trial, during trial, and after trial. So to give the Court some examples. Before trial, he stated that the proceedings were related to an international conspiracy involving Merck. And it went back to the day that they pulled Vioxx from the market and their stock dropped billions of dollars. That's at docket number 52. After trial, he wrote that a child was not allowed to testify at his trial due to sexual molestation related to that same stock exchange manipulation. That's docket 179. Before trial, he stated that he was a world-famous physician. During trial, he attempted to serve as his own expert witness. Before trial, he said that the government was trying to kill him. After trial, he said that favorable witnesses were found dead under suspicious circumstances. Both of his lawyers, Mr. McAfee and Mr. Sampson, stated that they were unable to work with him because the meetings were dominated with his fixation on conspiracy theories. And during trial, he tried to introduce those conspiracy theories, but he was consistently shut down by the Court and by opposing counsel. Now, you're not offering medical opinion as to these examples you're giving. These are just your own examples that you—you're not a mental health professional, but these are your own protestations that there was a mental health problem. That's correct, Your Honor. I am not a mental health professional, but the point here is that the record is full of these examples that show just how fixed these delusions were in Mr. DeBruy's mind and how they affected his presentation and his defense of his case. How do we know that these were—he was delusional or he was trying to give the appearance of that to create a pillable issue in his case? I think all three of the experts actually testified that he bent over it. Well, Dwyer testified this explicitly, that he bent over backwards trying to convince Dr. Dwyer that he was not suffering from any mental issues during the evaluation. And all three of the medical professionals— Well, that could have been a part of the act, too, for all we know. Your Honor, I think, you know, as we see from this record, Mr. DeBruy was repeating those same delusions pre-trial in 2008, after trial in 2010, in motions and in pleadings, and again, in all of these interviews in 2011, 2012, and 2013, this is not a well man. Of course, you know, I think when I talk about conspiracy theories, there are hundreds of thousands of Americans, if not several million, that have all sorts of conspiracy theories about government and all sorts of stuff. Now, they're not all incompetent, are they? They're—I can't— They may be delusional, but they're not incompetent to stand trial. I mean, you've got all these militia-type nuts running around and all sorts of things that have conspiracy theories, but that doesn't make them incompetent for legal purposes, does it? It doesn't necessarily render a person incompetent, but here Mr. DeBruy had been diagnosed with delusional disorder, and you see throughout the record that it was affecting his ability to assist in his own defense. And I would also point out that the standard to go to trial for competency is lower than the standard to represent oneself pro se, and he was permitted to represent himself pro se in this trial. I think that was a clear error as well. What is the legal standard here? Is it abuse of discretion by the trial court in, for example, allowing him to represent himself? He has a constitutional right to represent himself, does he not? He does have a constitutional right to represent himself, assuming that he's competent and he made that waiver voluntarily and intelligently. All right, so what's the standard of review for us? Is it abuse of discretion? Is it clear error? We think that the court abused its discretion in not ordering a competency determination hearing before permitting him to represent himself pro se. Had he manifested any of these delusions or odd behavior prior to the time he began to represent himself such that the trial judge should have been on notice that he needed a competency hearing at that time? Absolutely, Judge Clay. I'm glad you brought that up. So, again, two years before trial, the government filed a bond revocation hearing, and it pointed to his mental health issues and concrete evidence of delusions that he was having at the time. It pointed to, you know, he was arrested for DUI and he went into the hospital and said that the Jews were responsible for Hurricane Katrina and made some allegations about being a world-famous physician and, again, this Merck stock drop issue. Okay, but is that something that was presented to the trial judge that the judge knew about at the time that his case commenced? Yes. So, again, when that bond revocation hearing took place, that magistrate Judge Pham amended the bond conditions after hearing that evidence and required medical or psychiatric treatment. Four months later, just four months later, that same judge, magistrate Judge Pham, held the motion to let him proceed pro se, held a hearing on that motion, and didn't inquire not one single question into his mental competency at that time before permitting him to proceed pro se. Okay. And the standard there is whether... Did he have the information that you had just recounted? Yes. He had just heard that information four months prior and was persuaded enough by it to amend the bond terms. And the standard for that, I would say, is whether a reasonable judge should have questions about a defendant's competency such that he should order a competency hearing. And here we argue that not only a reasonable judge... It really is whether he abused his discretion in failing to sui sponte, order the competency hearing. That's right. Not whether a reasonable judge would have done so, but whether there's abuse of discretion. Correct, but under Section 4241A, a judge is required to order a competency hearing. It's not optional. No, but our standard review is abuse of discretion. I mean, you've already admitted that. Yes, that's right. I mean, you know, the trial judge had three conflicting opinions and also was there during the trial, so he saw Mr. Dunbaru perform during the trial. And the judge determined that the one expert was more credible, had greater expertise, more persuasive, and that her opinion was supported by his own observations of Mr. Dunbaru's behavior in his courtroom during the trial. It's pretty hard for me to say that that is a clearly erroneous, factual determination by the trial judge, and that's what we're talking about there. Picking one expert over another expert is a factual call, and to say it's clearly erroneous is a high burden, is it not? It is, but if I could just make three points in response to that quickly. The first goes to Judge Clay's question earlier about whether Dr. Markopoulos' report actually was more thorough and more, you know, reputable, I guess. And here I would just say that Dr. Dwyer conducted that psychological testing. It's the MATCAT test. It has three parts. One, do you understand basic court rules? Two, if I give you a hypothetical, can you apply them? And three, what about if we apply those same rules and principles to your case? And he passed the first two with flying colors because, as this court is well aware, his intelligence and IQ is high. But he failed the third test miserably because he has no rational understanding of the proceedings against him and the facts against him. And when Dr. Markopoulos faced this issue, she chose not only not to do the MATCAT test, and you know she did a slew of other tests that were largely repetitive, but she actually didn't even do a comparable test that gets at that same question. She also glossed over clear evidence of these fixed delusions, calling these motions, which your honors have seen, you know, standard motion practice. And I think, you know, as I said at the outset, these motions are just clear demonstrations of his delusions. And finally, she relied on Mr. Sampson's silence, and I think that was a large error on her part because Mr. Sampson, as you all know, was instructed at the outset of the case that he could not take an active role in this litigation. He was only there to be an advisor to Mr. DeBrule and to answer questions that Mr. DeBrule posed. And by relying... Didn't he have a duty to intercede or to say something to the court if he thought his client was mentally incompetent? Your Honor, we think that he did, and that's why we made the ineffective assistance of counsel argument in our brief. We think that the reason that he didn't is because he was instructed by the judge not to take an active role, only to answer those questions. But we do think that there is support in the United States v. Martin and other cases for the proposition that he had a duty to step in and question his client's competency because he had those concerns. Of course, not taking an active role in the trial is different from raising the issue with the court that his client was incompetent to proceed or to represent himself. Well, I think that the record that we have in front of us is clear that he did not feel he was empowered to do so. Based on those instructions that he was given. If there are no further questions, I see I'm out of time. All right. Thank you. Thank you. Good morning. May it please the Court. Sonia Ralston for the United States. Before getting into the argument part, I'd like to clear up six issues about the record. The first is whether there is any finding in the record about the defendants. They keep saying competence at the time of the offense, but that's not a thing. It doesn't make any sense. Competence is whether you understand the charges against you and can assist your attorney in your defense. That's not something that can be determined at the time of the offense. There's no attorney involved in committing the offense. I thought she was arguing he was mentally incompetent at the time of the offense and therefore could not form an intent to conspire. I thought that was the argument. Yeah, so that's the issue. Then the issue is insanity, which has its own standards, which are much higher than incompetence. She said that that was adjudicated. I didn't think it was. Well, the only thing on the record about it is Dr. Markopoulos' report, where she finds that he was sane at the time of the offense. That's the only opinion about sanity. And the District Court found that Mr. DeBrule had waived his insanity defense. That's a finding in the record. He didn't raise it. That's correct. But Mr. DeBrule can't raise Mr. DeBrule's insanity for him. He has to raise his own rights, his own defenses. She says that she can't be guilty of conspiracy if conspiracy involves at least two people and if one of the conspirators is insane and can't form an intent to conspire, there could be no conspiracy because you need at least two people. So why can't she raise that issue? So on that issue, she could, but three responses. The first is that that's a trial issue for the jury. She should have raised it at trial. Nothing stopped her. Rather, her defense at trial was exactly the opposite. He was so in charge of everything that I was just a follower. That was her defense at trial. She didn't raise his insanity during her trial. If her defense is that I couldn't agree with anyone because there was no one with whom to agree, she could have raised that in her own defense. She chose not to. It's waived. It's waived. The second thing is it's purely a jury issue. Insanity, this court has held, and it's in a footnote in our brief, is only for the jury. It can't be found as a matter of law by not raising it for the jury. She can't come now and say an affirmative defense negates sufficiency because an affirmative defense can't negate sufficiency. How about the different time periods? One, during the time of the offense. Two, during the trial. Three, I guess, is in between when the plea bargain was offered to Mr. Dembrow and whether he was competent at that time to accept or reject the plea bargain. Was there a determination of competency at that time? There was not, Your Honor, but it doesn't matter because she can't assert his rights to the plea bargain. The plea bargain was made to him, not to her. She has no rights in that bargain whatsoever. Did she get benefited by a plea bargain to him? She might have, but, Your Honor, this court has previously held that defendants can't raise co-defendants' rights. The rights are personal. And whether she would have benefited, that was at the government's discretion that the government had offered to drop the charges against her in exchange for his plea. But that was, she has no rights in that bargain. She couldn't have forced him to plead guilty. She couldn't have gone to the court and said, I really want him to take this. She has no rights in that. That she would have collaterally benefited is, you know, good for her, but there's no, she has no standing to raise his rights regarding the plea bargain. Finally, I mean, she filed a motion for a new trial based upon newly discovered evidence, the statements of the trial counsel. Was that ever ruled on? So the court kind of, not directly. So the court rules, she also raises a number of arguments going to this competency thing and a motion to reconsider, which the court did directly rule on, and finds that there's nothing there, the defendant's competent, and therefore, for the same reason that the court finds there's no good cause for the waiver of insanity, that there's nothing here. There's no there there about his competence. And therefore, there's nothing to decide. I would note on appeal, she's not asking for a new trial. Answer the question. She filed a motion for a new trial based upon newly discovered evidence, which is the statement of the trial counsel. Was there a ruling on that motion by the district court? I don't believe that there is an opinion on it. Is there a ruling? Denied? Granted? I don't know. There might be a docket. There's not an opinion on it. There might be a docket entry that just says denied. But I would have to check. And I can do that for you, and I'm sorry. Is there sort of a question of jurisdiction as to her? I mean, if there was a pending motion for a new trial that was never ruled on, do we even have jurisdiction over her appeal or would it have to be sent back for the district court to make a ruling on that motion? Because normally a motion for a new trial would suspend the appellate right, right? So the district court did proceed to sentencing with her long after the rule 33 motion had been raised. And so I suspect there is something on the record. I'm happy to double-check that and file a letter. We can't find anything. We can't find a ruling. We'd look. If there was no ruling on that, would the defendant waive the motion for a new trial by filing a claim of appeal, or how would that work? So I think the district court's order denying the motion to reconsider the competency could be read as denying the motion for the new trial because it's based on the same grounds. So her only grounds for a new trial are tied up in this my husband was incompetent at the time of trial issue or was insane at the time of the offense. And the court, in its rulings, both on the competency ruling 255, the original one, and then the later reconsideration motion, soundly redirects every argument that she's made over and over again. And so there's no reason to think that the court, that anything different would have happened if there is no docket entry simply denying that motion number on the rule 33 motion. I think it's just a ministerial oversight and it would be a waste of judicial resources to remand just to have the court enter something that it's already said what it thinks and have this come up and have to do this all over again. But more to the point, her argument fails as a matter of law. And so there's just nothing there for her. The case she relies on, Phillips, has been abrogated by the Supreme Court in Powell that because it's a jury issue about insanity, even if Mr. DeBruyle had raised insanity, even if a jury had found him insane, it still could have convicted her and there would be no grounds whatsoever to disturb that verdict under Powell because inconsistent verdicts have to stand. And therefore, she just has no leg to stand on and it doesn't, it would be a waste of resources to have to do this all over again. The district court considered all of the arguments that there were to consider and rejected them. To the extent there was a question about sanity, Dr. Markopulos addressed it, the district court found that, her opinion persuasive and credible throughout multiple times. And if there was an oversight on the district court's part by not entering an order on the one particular motion, that that's unfortunate, but shouldn't hold this court up. The next thing I wanted to point out, to talk about the peer review process and that the other doctors did the same thing. That's not true. Dr. Morrow didn't consult with anyone. He was asked about it. He said, sometimes I do, but not in this case. Dr. Dwyer said that he had offhand talked about it with another colleague and that's at page ID 2527. The other forensic panel reviewers were also board certified, which is one of the reasons that the district court gave for finding Dr. Markopulos more persuasive. So that also applies to her peer reviewers. And to the extent they're saying that the other doctors, the BOP doctors did the same thing, that's not the same thing. The next point is about the 2008 arrest and bond revocation motion. That was entirely premised on the defendant being high on drugs at the time. That's the reason he was arrested. He said the things he said at the hospital that were raised at that hearing, high on drugs. And the district court made that finding in the ruling on the competency order. And the last thing is that... You think all his statements about Merck and this and that were because he was high on drugs as opposed to being delusional? The statements about Merck, some of them yes, some of them no. Or some of them we don't know. The statements about Hurricane Katrina and the conspiracy about Jews, that's all high on drugs. And that only happens that one time. The thing about the MACCAT and whether this testing makes Dr. Dwyer's report more persuasive than Dr. Markopulos's. The district court addressed this at page ID 2808 where Dr. Markopulos also reviewed the data that Dr. Dwyer had collected. So she didn't redo the test because she had the raw data. She didn't have to redo the test. But she reinterpreted the data. She looked at the same data that Dr. Dwyer looked at and she gave it a different finding. She said he scored it subjectively and he gave too few points. That if you look at this, under the training that I've had in using this exam, that you get a higher score. And so she looked at the same data. She didn't have to rerun the whole test in order to also use that. So I think the key thing in this case is whether Mr. DeBrewel could understand what was going on. And if he could, then everything else kind of falls away. He understood what was going on. He knew the consequences of going to trial. The standard is the sufficient present ability to consult with his lawyer and a rational as well as factual understanding of the proceedings. A rational understanding of the proceedings is what are the consequences. He knew he would go to jail. He understood that the stakes were high. And you can see that in the colloquy he has with the magistrate judge at the pro se hearing. Also, he understood what the trial was about. He understood that the whole point of the trial was whether he prescribed these drugs in the course of medical treatment or not. You can tell this from his testimony, which goes over the course of two days. It's coherent. He's explaining his patient's conditions. He's explaining why he prescribed the drugs. He's explaining his expertise as a pain medication physician. It was simply a losing defense. It wasn't irrational. The jury just didn't believe him. If the jury had believed him, they would have had to acquit under the laws that was given to them. That it was a losing defense doesn't make it irrational. And this goes to what the district court pointed out in its opinion as to why Dr. Morrow wasn't as persuasive. And that's because Dr. Morrow kept relying on the idea that the defendant should have taken the plea. Most defendants should take the plea. But they don't. Almost every defendant who goes to trial and gets convicted and gets a higher sentence wishes he had taken the plea. That doesn't make the decision to go to trial irrational. And even if it's irrational, it doesn't mean that the defendant is incompetent. The bar for incompetency is high, as this court said in Miller. And this defendant doesn't even come close. where you have a credible expert on the record, and nobody objected to Dr. Markopoulos being an expert. She is an admitted expert by both sides. That it cannot be clear error for the district court to rely on that opinion in making its finding. And the last point I would like to make is regarding the standard of review for whether the district court should have held sua sponte, a competency hearing. They argue that the standard of review, when the issue hasn't been raised by anyone. The district court has that authority, and they argue that the standard of review is abuse of discretion. But in Gooch, in 2014, this court said, although it's an unpublished opinion, there were two defendants in that case. One had raised the issue. The other hadn't. And the court says, clear as day, for the defendant who raised the issue, we review for abuse of discretion the failure to hold a hearing. For the defendant who said nothing, even though he was pro se. Plain error. This defendant gets plain error review. The burden is on him. He's got to show an effect on his substantial rights. He's got to show that it was obvious that the district court missed the signs, the red flags. And there's nothing here that's obvious. Not when this court, in Harry's Rebell, is saying that even if you have a mental illness, that doesn't mean you get an examination. When this court said in Davis that a defendant who's under psychiatric care, it was error for the district court to order a competency evaluation when the government moved for it. In Heard, where this court said that there's no error in not ordering an evaluation where the defendant is schizophrenic. It can't be clear or obvious error for the district court not to order a hearing in light of that precedent and in light of the record here. So I apologize for not having a more clear answer about the Rule 33 motion. That wasn't an issue raised in the briefs, but I will look into it if I find anything else. Well, Judge Gilman, I think, makes a good point whether we even have jurisdiction over Kim Dabroul's appeal since there hasn't been a final determination made without a ruling on the motion for new trial. So, I mean, it appears that without a final ruling, it would be an interlocutory appeal. So what do you think of dismissing it for lack of jurisdiction? I'd like the opportunity to look into the case law a little bit because I think there might be an argument that the district court implicitly ruled on the motion and that that would grant this court jurisdiction and that it would be a tremendous waste of judicial resources to have to do this again. I mean, if we don't have jurisdiction, whether it's a waste of resources or not, we can't take jurisdiction. I understand that, Your Honor. And I would just want to... I would hate for the court to jump to the conclusion that there's no jurisdiction if there's any way around that conclusion. And so I would like the opportunity just to look into it briefly in that this is an issue that was never raised and to file a brief letter if we find anything. That would probably be helpful. Okay, I'll do that. I'm sorry again for not having anticipated it. We ask that you affirm. All right, thank you. Ms. Randall-Holt, did you reserve some time for rebuttal? I did, Your Honor, just two minutes. All right. Maybe I'm misunderstanding, but I think she's saying we never raised the issue about the motion for a new trial, but that's clearly stated in our principal brief where we even laid out the standard of review for the motion for a new trial. But you haven't claimed lack of jurisdiction on our part because of that ruling. Well, Your Honors, I think what the district court... you know, not just agreeing with the government, but what the district court did, while my motion was still pending, the district court sent... what they did, we asked them to give us a new trial or the alternative to stay the sentencing until we could find out whether the defendant was competent at the time of the offense. Well, when he was sent off for the second... You mean insane at the time? Right. I was corrected by the attorney that there's a difference between competency and sanity. Well, I think Your Honor... And sanity is a defense that has to be raised, and you did not raise it during the trial, did you? My client... No, Your Honor, we did not raise insanity for Ms. DeBrule. I don't think we had... I don't think we have standing to raise sanity. I thought you did because you can't be guilty of conspiracy if the other co-conspirator is insane. If that... You need to have two people for a conspiracy. If one of them's insane, you can't have one, right? I thought that was your argument. That is my argument. So why can't you, as a defense, say there is no conspiracy because there weren't two sane people to form a conspiracy? Well, I could just say that, but do you think I would have gotten an instruction from the judge when I had no expert legal evidence to prove that he was insane? I didn't get that until after he was evaluated by the BOP. And then that's when we learned he is crazy. You know, there were thoughts... Is your position that he's insane or is it your position that he was not competent to stand trial? Well, the way I understand it, from United States v. Phillips, and I think that is still good law and the U.S. attorney is in error, that that case says competent at the time of the offense. And I think that is good law in this circuit. It means, no, he was not sane. He was not operating with what a normal, reasonable person would be operating with the mental capacity. And that is good law. I would like to address that also, that Phillips case, because we rely on that case. And it's not based on a legal proposition that has been overturned by the Supreme Court. There were two cases that Phillips cited for their proposition that there must be mutual agreement, and that was United States v. Williams, which was a Sixth Circuit case, and United States v. Fleming, which was a Seventh Circuit case. But the majority of these cases indicate that those two cases were cited just for the proposition that there must be a mutual agreement in order to be a conspiracy. And so that holding in Phillips still stands. Thank you, Your Honors. All right, thank you. Ms. Rogers? I just have four very quick points to make, Your Honors. The first is that opposing counsel just said that the statements of the bond revocation hearing were made because he was high on drugs. I think that rewrites the record, first of all. There is no basis for counsel here to say what was medical, what was made as a basis of his delusions or his conspiracy theories versus drugs. And I think they raised in the bond revocation hearing actually separate concerns about his drug use and about his mental health issues. And in rewriting those bond conditions, the court actually rewrote separate bond conditions addressing both of those points. So to represent today that it was all about drugs, I think mischaracterizes the record. The second point is counsel just argued that you can't reverse for clear error just because he selected a losing defense. Again, there were two BOP examiners and all of Mr. DeBruhl's lawyers who said that he was unable to adequately assist in his defense, and they based this on the fact that every single meeting that they had with him, he was just dominated by these conspiracy theories and unable to focus on the facts, to focus on the witnesses, to focus on his trial presentation. There's no oxygen in the room to think through his defense, no way to prepare when he was consumed by this conspiracy theory. So to say that he just selected a bad defense, I think, is a gross mischaracterization of what happened and Mr. DeBruhl's ability to put on his own defense. Third, counsel argued that plain error should apply to the competency hearing point. This court has held in U.S. v. Jones that that's an abuse of discretion standard. The policy, of course, for plain error is to prevent someone from sitting on their rights, and I have not seen a case where this court has applied plain error to a pro se defendant who failed to raise his own competency when he thought that he, in fact, was competent at the time. That just turns the policy on its head. And then lastly, just briefly, I want to talk about Mr. McAfee, if I could. Mr. McAfee provided ineffective assistance of counsel because he stated under oath that he actually doubted Mr. DeBruhl's competency. He did nothing because although he, quote, had it on his list to get him investigated, it became kind of not his problem when his motion to withdraw was granted. That motion to withdraw included an affirmative statement that Mr. DeBruhl was competent, which he admitted under oath he made at least in part so that his motion to withdraw would be granted. And that just infected not only Dr. Markopulos's report, which relied on that statement, the judge's decision, which relied on that statement, and it prejudiced. If he had raised it at that early stage again, which was two years before trial, one of the key factors that the court considers in rendering a decision is the opinion of counsel. So it could have changed the entire ballgame two years before trial ever started. And it's our position that was ineffective assistance of counsel. For all these reasons and those stated in our brief, we ask that you reverse and remand for further proceedings. Thank you. Thank you. Ms. Rogers, the court would like to thank you for taking this appointment under the Criminal Justice Act. We know you do that as a service to the court and a system of justice. My pleasure. We very much appreciate it. Thank you. There being no further, the case is submitted.